IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00232-GCM

| | |
|---|---|
| GLOBAL IMPACT MINISTRIES, CITIES4LIFE, INC., DAVID BENHAM,<br><br>Plaintiffs,<br><br>v.<br><br>MECKLENBURG COUNTY CITY OF CHARLOTTE,<br><br>Defendants. | ORDER |

This matter is before the Court on Defendant City of Charlotte's Motion to Enforce Settlement Agreement (Doc. No. 98.) Upon careful consideration of the arguments submitted by the parties, Defendant's Motion to Enforce Settlement Agreement is **GRANTED** in part and **DENIED** in part.

I. BACKGROUND

On April 18, 2020, Plaintiffs David Benham, Cities4Life, Inc., and Global Impact Ministries d/b/a Love Life and Love Life Charlotte filed suit against the Defendant City of Charlotte (hereinafter "City") and Mecklenburg County, North Carolina. (*See* Doc. No. 36.) Plaintiffs allege Defendants violated Plaintiffs' constitutional rights during the first days of the COVID-19 pandemic by curtailing their participation in protected speech near a women's reproductive healthcare facility in Charlotte. (*See generally id.*) On August 19, 2020, this Court granted Denise M. Harle's Motion to Appear Pro Hac Vice for all three Plaintiffs. (Doc. No. 26.)

On June 12, 2024, the City filed a Motion to Enforce Settlement Agreement. (Doc. No. 98.) The City requests the Court enforce a Settlement Agreement allegedly reached between

Plaintiffs and the City in March 2023 and sanction Plaintiffs with the City's attorneys' fees and costs for filing the motion. (Doc. No. 99 at 1.)

Where "there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily." *Bell v. Department of Homeland Security*, 2019 WL 5700778 at *1 (W.D.N.C. 2019), *quoting Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). As such, a plenary evidentiary hearing to this dispute was held on September 11, 2024. *See also Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)).

## II. FINDINGS OF FACT

The Court finds that starting in late 2022 and continuing through early 2023, the parties engaged in extensive written but not oral discovery. (Doc. No. 99 at 2.) On March 23, 2023, while the parties were discussing deposition scheduling, Plaintiffs and Mecklenburg County alerted the City that they had reached a resolution of claims. (*Id.*) The Plaintiffs and Mecklenburg County filed a Joint Stipulation of Dismissal with Prejudice on March 29, 2023.[1] (*Id*; Doc. No. 76.)

Once the City learned of the dismissal, they began to engage in settlement discussions with Plaintiffs by email. (Doc. No. 99 at 2-3.) Between March 27 and March 30, former counsel for the Plaintiffs, Denise Harle, and counsel for the City exchanged numerous emails regarding a monetary settlement and the terms of the settlement agreement. (Doc. No. 99 at 3-4; *see also* Doc. No. 99-1 at 1-5.) Plaintiffs first demand was sent to the City on March 27 at 10:52 AM, which included "a proposed settlement agreement with the terms of our proposal" and a demand in the amount of $75,000. (Doc. No. 99-1 at 7.) On March 30 at 3:29 PM, the City responded

---

[1] The City contends they were not consulted about the Joint Stipulation of Dismissal in accordance with Rule 41. (*See* Doc. No. 99 at 2, fn. 1.) The Court acknowledges the City's position and notes that it is not central to the issue at hand.

with edits to the language of Plaintiffs' proposed settlement agreement and an offer in the amount of $20,000. (*Id.* at 18.) At 4:38 PM on the same day, Plaintiffs responded with a counterdemand of $70,000 and stated "[t]his language is acceptable to us. We'll look forward to any further edits the City has to the proposed settlement terms." (*Id.* at 20-21.) At 6:14 PM, the City thanked Plaintiffs for the quick response, proposing additional edits to Plaintiffs' settlement agreement and a counteroffer of $25,000. (*Id.* at 20.)

The following morning, on March 31 at 10:11 AM, Plaintiffs provided a counterdemand in which they removed part of the City's proposed language and demanded $50,000. (*Id.* at 33.) At 2:19 PM, the City responded "[w]e're fine with removing the word "doubtful" in that provision, so it appears we have agreement on the verbiage and it's now just a matter of the payment" and counteroffered $35,000. (*Id.* at 32.) At 3:05 PM, Plaintiffs responded "[g]lad we have an agreement on the language, but $50k is our final number." (*Id.*) The City agreed to the counterdemand at 5:03 PM, stating "I've discussed with my client, and we can agree to the $50k. Glad we could reach a resolution." (*Id.* at 31.) At 5:31 PM, Plaintiffs responded "[w]e are glad, too. I'll put the final agreement in PDF for client signatures and circulate." (*Id.*) A few hours later, at 9:04 PM, Plaintiffs sent an email stating "[h]ere's the final PDF version. Please send over your client's signature page, and we'll compile. Meanwhile, we'll prepare a notice of dismissal." (*Id.*)

On April 3 at 1:01 PM, Plaintiffs sent the City a proposed Joint Stipulation of Dismissal. (*Id.* at 45, 53-56.) On April 4, counsel for the City obtained its client's signature on the settlement agreement. (Doc. No. 99 at 4, Doc. No. 99-1 at 58-61.) That same day, Plaintiff Global Impact Ministries d/b/a Love Life and Love Life Charlotte regular attorney and board

3

member, Jason Oesterreich,[2] learned of the settlement and reached out to Ms. Harle. (Doc. No. 102 at 4.) Mr. Oesterreich objected to the settlement and informed Ms. Harle that the terms of the agreement reached were not acceptable. (*Id.*) At the evidentiary hearing, Mr. Oesterreich testified that he had been left off correspondence from Ms. Harle informing Plaintiffs of the negotiations with the City. Furthermore, Mr. Oesterreich stated that Ms. Harle did not have authority from Love Life to negotiate or settle with the City for an amount less than $50,000 without an admission of liability. (*See* Doc. No. 102-1 at 2.)

After counsel for the City secured his client's signature on the settlement agreement, he received a call from Ms. Harle informing him that Plaintiffs had changed their minds and were refusing to execute the March 2023 Settlement agreement. (Doc. No. 99 at 5.) Ms. Harle did not disclose the reason for the Plaintiffs' refusal to sign and instead proposed a formal mediation to discuss. (*Id.*) The City agreed as a courtesy to the mediation but expressly reserved its right to file a motion to enforce the settlement. (*Id.*)

On April 5, Ms. Harle reached out via email to counsel for the City with additional proposed language. (Doc. No. 102-1 at 9.) After receiving no response from the City, Plaintiffs reached out again on April 11, stating "[j]ust checking back on whether your client would agree to the proposed language, and whether it would affect the number. Alternatively, my client has suggested this slightly more modest addition . . . ." (*Id.* at 8-9.) On April 13, after still not receiving an answer from the City, Ms. Harle reached out again stating in part "[a]re the sentences ok with your client? If so, I'll let my client know and propose any change to the number." (*Id.* at 8.) On May 4, the City responded "I have spoken to my client, and if your clients will agree to the settlement amount of $40k, we can agree to the added language. If not,

---
[2] Mr. Oesterreich is not an attorney of record in this matter. His Declaration also states that he is counsel for Cities4Life, Inc..

4

we can just keep things as is." (*Id.* at 5-6.) The parties did not appear to reach an agreement on the additional language and on July 5 the parties proceeded with mediation, which also failed to yield a compromise. (Doc. No. 99 at 5.)

On September 1, 2023, Ms. Harle filed a Motion to Withdraw as Counsel for Plaintiffs and to Stay Discovery Deadline, explaining that "a conflict of interest has arisen between Counsel and Clients." (Doc. No. 86 at 1.) This Court granted Plaintiffs' motion on September 5, 2023, and B. Tyler Brooks filed a Notice of Substitution of Counsel on October 17, 2023.[3] (Doc. No. 90.) Since Plaintiffs obtained new counsel, until this present motion was filed, the parties discussed taking multiple depositions, including the deposition of Plaintiff David Benham which was noticed for May 2024. (Doc. No. 102 at 5-6.)

### III. CONCLUSIONS OF LAW

The court has reviewed the evidence submitted by the parties and concludes that a complete settlement agreement was reached as to all material terms in the March 31, 2023 correspondence between counsel for the City and former counsel for the Plaintiffs, Ms. Harle. The additional email correspondence between Ms. Harle and the City beginning on April 5, 2023, was simply an attempt to modify the contract that was formed between the parties and not evidence that the parties had not reached a final agreement on all terms on March 3. (*See* Doc. No. 102 at 9-12.)

"[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Bell v. Department of Homeland Security*, 2019 WL 5700778 at *1 (W.D.N.C. 2019) (granting motion to enforce settlement), *quoting Hensley v. Alcon Labs, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). To exercise its power, "a district court (1) must find that the

---

[3] Additionally, this Court granted admission for Stephen N. Crampton to appear pro hac vice as additional counsel for Plaintiffs in April 2024. (Doc. No. 97.)

5

parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id*. Resolution of a motion to enforce a settlement agreement draws on standard contract principles. *Hensley*, 277 F.3d at 540. "Federal common law governs enforcement of a settlement agreement brought before the Court as part of ongoing litigation involving a federal statutory scheme*.*" *Food Lion, LLC*, 2013 WL 1320416, at *1 (citing *Gamewell Mfg., Inc. v. HVAC Supply, Inc.*, 715 F.2d 112, 115 (4th Cir. 1983)). "There is no precise source of federal common law, but in crafting the federal common law of contract interpretation, the court looks to common rules and generally accepted principles." *Bala v. Commonwealth of Virginia Dept. of Conservation and Recreation*, 2014 WL 1281235, at *3 (E.D. Va. Mar. 27, 2014). North Carolina ascribes to the general principles of contract law and dictates that a contract requires assent, mutuality, and definite terms. *Washington v. Hartford Life and Accident Insurance Company*, 2017 WL 2930579, *2 (E.D.N.C. July 7, 2017) (citing *Schlieper v. Johnson*, 195 N.C. App. 257, 265 (2009)).

The parties reached a complete agreement on March 31, 2023. The correspondence clearly depicts the negotiations between the parties that led to a meeting of the minds. Plaintiffs' counsel, Ms. Harle, circulated a "final PDF version" of the agreement with instructions to the City to consummate the agreement by circulating its signature page. (*See* Doc. No. 99-1 at 31.) The emails sent by the City at 5:03 PM, which states in part "[g]lad we could reach a resolution"; and by Ms. Harle at 5:31 PM, which states "[w]e are glad, too", clearly indicate that there were no further terms to negotiate and ratifies Plaintiffs' acceptance. The definite terms of the agreement between the parties can easily be ascertained in the email correspondence between the attorneys and in the "Settlement Agreement & Release" attached to Ms. Harle's email on March 31 at 9:04 PM. (*See id.* at 38-43.) The fact that the "Settlement Agreement & Release" was not

signed by all the parties[4] does not bar enforcement by this Court. *See Food Lion, LLC*, 2013 WL 1320416 at *3. Since the Court finds that the parties reached a complete agreement with ascertainable terms and conditions, the agreement between the parties will be enforced.[5]

Plaintiffs argue that Ms. Harle did not have authority to settle the case on the terms discussed in March 2023 and as such, the Court should not enforce the agreement. (*See* Doc. No. 102 at 12.) Under North Carolina law, "[s]pecial authorization from the client is required before an attorney may enter into an agreement discharging or terminating a cause of action on the client's behalf." *Lowrie v. Est. of Csanyi*, 290 N.C. App. 679, 892 S.E.2d 511 (2023) (*citing Harris v. Ray Johnson Const. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000)). Additionally, there is a presumption for procedural and substantive aspects of a case "in favor of an attorney's authority to act for the client he professes to represent." *Harris*, 139 N.C. App. at 829. This covers instances where the special authorization is required. *Id.* "One who challenges the actions of an attorney as being unauthorized has the burden of rebutting this presumption and proving lack of authority to the satisfaction of the court." *Id.* (*citing Chemical Co. v. Bass*, 175 N.C. 426, 428-31, 95 S.E. 766, 767-68 (1918)).

The Plaintiffs have not met their burden of proving Ms. Harle acted outside her apparent authority to settle the case. Ms. Harle served as counsel of record for all three Plaintiffs since August 2020. She held herself out to the City's counsel as having authority to act on behalf of all Plaintiffs. The record is clear that neither the City nor Mecklenburg County knew of any issues between Love Life and Ms. Harle. Based on the length and content of the negotiation

---

[4] The City signed the Settlement Agreement & Release on April 4, 2023. (Doc. No. 99-1 at 61.)
[5] This result is consistent with this Circuit's strong policy in favor of enforcing settlement agreements that parties enter voluntarily. *See United States ex rel. McDermitt, Inc. v. Centex-Simpson Constr. Co.*, 34 F. Supp. 2d 397, 399 (N.D. W. Va. 1999) (enforcing settlement agreement), *aff'd sub nom. United States v. Centex-Simpson Const.*, 203 F.3d 824 (4th Cir. 2000); *see also Petty v. The Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988).

communications, the City was justified in its belief that Love Life had authorized Ms. Harle to settle the case on Plaintiffs' behalf. The only evidence supporting Ms. Harle's lack of authority is testimony from Mr. Oesterreich. Without any acknowledgment from Ms. Harle that she lacked authority to settle, or some additional evidence, Plaintiffs have not sufficiently rebutted the presumption that Ms. Harle acted within her apparent authority. *See Lowrie*, 290 N.C. App. 679; *Harris*, 139 N.C. App. at 829-830. Rather than argue against the enforcement of the agreement reached between the parties, Plaintiffs may be better served pursing a private cause of action against their former attorney. *See Petty*, 849 F.2d at 133 ("Unless the resulting settlement is substantially unfair, judicial economy commands that a party be held to the terms of a voluntary agreement.") This Court finds that the settlement agreement is not substantially unfair.

Finally, the Court rejects the City's request for sanctions from Plaintiffs for reasonable attorneys' fees and costs for filing the present motion. The City justified its delay in filing this motion by stating that a "more prudent decision—in light of attorneys' fees, costs, and judicial resources—was to persuade Plaintiffs privately of the consequences of their about-face." (Doc. No. 99 at 12.) The Court finds that allowing over fourteen months to pass between the formation of the agreement and the City's attempt to enforce said agreement is unreasonable. In truth, unnecessary attorneys' fees, costs, and judicial resources were expended by allowing this time to pass before seeking enforcement of the agreement.

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion to Enforce Settlement Agreement is **GRANTED** as to enforcing the terms of the settlement agreement reached by the parties on March 31, 2023; and **DENIED** as to awarding the City of Charlotte its costs and reasonable attorneys' fees in connection with its motion to enforce the settlement agreement.

Signed: September 18, 2024

Graham C. Mullen
United States District Judge